**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

Geovanny Rendon, Joel Rosas and Emmanuel
Morales, on behalf of themselves
and others similarly situated,

               Plaintiffs,

     v.

FiftyOne Merchants LLC d/b/a Via Carota
and Rita Sodi,
             Defendants,

---

**COMPLAINT**
**FLSA COLLECTIVE ACTION**
**AND RULE 23 CLASS ACTION**

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and others similarly situated, by and through their undersigned attorneys, respectfully allege as follows:

### JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

2. This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

### STATUTE OF LIMITATIONS

4. Plaintiffs seek damages under the FLSA for three (3) years, with a tolling of the statute of

limitations for 8 months starting on or about March 16, 2020, to on or about November 3, 2020 based on the Governor of New York's Executive Order 202.8 as subsequent reissued and extended by other Executive Orders tolling the statute of limitation.

5.   Plaintiffs seeks damages under NYLL for a period of six (6) years, with a tolling of the statute of limitation for 8 months starting on or about March 16, 2020 to on or about November 3, 2020 based on Executive Order 202.8 and as subsequent reissued and extended by other Executive Orders tolling the statute of limitations.

### THE PARTIES

#### Plaintiffs

6.   Plaintiff Geovanny Rendon ("Rendon") a/k/a Giovanni Rendon worked as a busser from approximately July of 2018 to January of 2019.

7.   Plaintiff Joel Rosas ("Rosas") worked as a busser worked from approximately April 2018 to March of 2020.

8.   Plaintiff Emmanuel Morales ("Morales") worked as a server and bartender from June of 2021 to the present.

#### Defendants

9.   Defendant, FiftyOne Merchants LLC is a domestic corporation which owns and operates a restaurant called Via Carota, located at 51 Groove St., NY, NY 10014. ("Fiftyone")

10.  Defendant, Rita Sodi, is one of the owner and chef of Via Carota ("Sodi").

11.  Defendant Fifthone has gross annual sales in excess of $500,000 per year.

12.  Fiftyone employs workers who handle goods or materials that have moved or been produced in interstate commerce.

13.  Defendant, Fiftyone currently employs more than 90 employees according to their PPP

loan application. See exhibit 1

14. Fiftyone's schedule for front of the house employees lists 44 tipped employees. See exhibit 3.

15. The turnover in the restaurant industry is very high, particularly during the pandemic.

16. It is estimated that during the claim period for the FLSA collective, more than 100 people were eligible to participate in the collective action.

17. During the class period, more than 200 people are eligible to participate.

18. Defendant Sodi managed the restaurant and was involved in all aspects of Defendant's Restaurant business.

19. Defendant Sodi had operational control over staffing decisions in Restaurant and ultimate authority over Restaurant's employees' rates of pay, scheduling, hiring and firing, and maintenance of employment records.

20. Paychecks were issued to employees by Defendant FiftyOne.

21. The Restaurant uses the website www.viacarota.com as its official website.

22. During the pandemic, Defendants received multiple PPP loan from the Small Business Administration. See exhibit 1

23. The website SBA.com reports that Fiftyone received 2 separate PPP loans totaling $2,209,950. See exhibit 2.

Rita Sodi

24. Rita Sodi is one of the founder and chef of the restaurant.

25. Rita Sodi is a current owner of the restaurant.

26. Rita Sodi is physically in the restaurant on a regular basis, supervising staff, setting schedules, overseeing staff, hiring and acting as an owner manager.

27. When Plaintiff Morales complained on October 2, 2021 about the tipping practices at the restaurant, Defendants Fiftyone and Sodi responded to him about the problems and possible solutions.  See Exhibit 7.

28. Defendants, Fiftyone and Sodi are joint employers of the plaintiffs.

**FACTS**

29. Defendants committed the following acts knowingly, intentionally, and willfully.

30. Defendants employed all of the Plaintiffs, and proposed FLSA Collective Plaintiffs and class members.

31. Defendants knew that the nonpayment of minimum wage, and illegal deductions from tips would economically injure Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class and violate federal and state laws.

32. Defendants failed to pay the them the correct hourly wage, ran an illegal tip pool, failed to pay the Plaintiffs the proper minimum wage, the proper overtime wage, did not properly list the minimum wage, which is a violation of New York Labor Law ("NYLL") § 195(3) and failing to provide accurate wage Notices under New York Labor Law ("NYLL") § 195(1).

33. Plaintiffs, FLSA Collective Plaintiffs, and Class Members worked regular time and overtime at the incorrect hourly wage.

34. Defendants used the tip credit wage which they were not authorized to do because Defendants' restaurant operated an illegal tip pool.

35. Defendants failed to provide the Plaintiffs, and Class Members with proper wage notices listing the proper wages, and other important wage information.

36. When Plaintiffs wages changed, or tip credit deductions changed, the Defendants failed to update their wage notices.

Geovanny Rendon

37. Plaintiff, Giovanni Rendon ("Rendon"), usually worked the dinner shift on Friday, Saturday and Sunday and he also closed the restaurant.

38. Plaintiff, Giovanni Rendon would arrive at 5 pm or 6 pm and usually work until 2 am, but sometimes later.

39. Plaintiff, Rendon worked longer than 2 hours doing closing side work.

40. Plaintiff, Rendon often started the closing side work around 12 midnight and did not finish until after 2 am in the morning.

Emmanuel Morales

41. Plaintiff, Emmanuel Morales, worked in the evening shift on Thursday, Friday, Saturday and Sunday.

42. Plaintiff, Morales started work around 5 pm and left around 12:30 to 1 am, and sometimes later.

43. Plaintiff Morales spent more than 2 hours or 20% of his shift doing side work.

Joel Rosas

44. Plaintiff Rosas worked Wednesday, Thursday, Friday, Saturday and sometimes on Sunday.

45. Plaintiff Rosas worked both the lunch and dinner shifts.

46. When Rosas worked the lunch shift, he would arrive between 10 am and 11 am.

47. When Rosas worked the dinner shift, he arrived between 2:30 and 4 pm to start working the dinner shift.

48. Rosas would leave around 2:30 am to 3:00 am

49. Plaintiff Rosas often worked double shifts and he often worked 6 or 7 shifts per week.

50. Plaintiff sometimes worked 60 hours a week.

5

Polisher

51. Defendants maintained a practice of illegally misappropriating gratuities.

52. Defendants had one busser work the entire shift as a polisher.

53. The polisher worked in the back of the restaurant in the kitchen area.

54. Defendants operated an illegal tip pool at the restaurant for tipped employees, including servers, bussers, runners, bartenders, and others because of the inclusion of the polisher in the tip pool.

55. The polisher did not perform service work the night that they worked in the back of the restaurant as a polisher.

56. The customers did not see the polisher.

57. The polisher did not provide direct customer service, nor did the polisher received tips directly from the patrons.

58. The polisher is not a tipped person as he did not receive tips directly from the customers.

59. The polisher participated in the tip pool.

60. On or about 1/27/22 the polisher for was Ricardo Antezana ("Antezana").

61. Mr. Antezana participated in the tip out.  See exhibit 4

62. Mr. Antezana was listed as a back waiter.

63. Mr. Antezana received $258.84.

64. On or about 1/28/22, the polisher was Jamie Angel ("Angel").

65. Mr. Angel received a full cut of tips which was $258.84 from the tip pool.  See exhibit 5.

66. On or about 1/29/22, the polisher was Jamie Angel.

67. Mr. Angel received a full cut of the tips which was $260.73 from the tip pool. See exhibit 6.

68. Defendants' policy of including the polisher in the tip pool effected all of the employees in the tip pool by decreasing the amount of their earnings by the amount received by the polisher.

69. Defendants knew that nonpayment of minimum wage/overtime, misappropriating Plaintiffs' tips, and making improper deductions from Plaintiffs' wages would economically injure Plaintiffs and violate federal and state laws.

TIP POOL

70. Defendants required all of the front of the house workers to participate in the tip pool and share their tips.

71. Plaintiffs, and similarly situated employees, did not have any control over how the tip pool was divided.

MINIMUM WAGE

72. Plaintiffs wage notice listed the wrong wage and overtime wage because Defendants were not entitled to utilize the tip credit wage.

73. Plaintiffs did not receive an updated wage notice when the wage increased or the tip credit amount was reduced.

74. Defendants never explained the wage payment to the Plaintiffs.

75. Plaintiffs was never told that he would be paid the tip credit wage and how his compensation would be calculated.

76. Plaintiffs should have been paid minimum wage.

77. Defendants paid the Plaintiffs the tip credit wage.

78. Plaintiffs' wage statement were also incorrect as they included the tip credit wage when the minimum wage was the correct wage.

79. Plaintiffs and other class and collective members were treated the same.

## VIOLATION OF THE 80/20 RULE

80. Plaintiffs spent more than 2 hour or 20% of their time doing non-service work.

81. Defendants violated the 80/20 rule by requiring employees to work more than 2 hours doing opening work, side work and closing work.

82. Plaintiffs was forced to do non-tipped work, which included opening work, side work and closing side work ("side work"), including folding napkins, preparing napkin "roll ups," doing "triangles," receiving orders of liquor and non-liquor beverages, restocking wine, stock wine in private dining room, take wine inventory, cleaning rest rooms every 30 minutes, taking out garbage, separating recyclables, stocking or making coffee, setup and breakdown water station, setting up 5 or 6 service station, breaking down service station, setting up and breaking down ice for wine and drinks, setting up and breaking down dining room, moving tables and chairs, moving planters, setting up and breaking down outdoor seating, cleaning dining room, running errands, collecting server nightly reports, managing cash draw, placing money in the safe, distribution of cash tips, preparing envelopes and paper work for cash tips, and preparing end of the night closing paper work.

83. During the lunch shift, Plaintiffs worked more than 20% of their time doing non-tip related work listed above.

84. At closing time, the Plaintiffs often worked more than 2 hour or 20% of their time doing closing side work.

85. Plaintiffs, Class and Collective members worked more than 2 hours or 20% of his time doing side work.

86. Plaintiffs were not allowed to have 15 minute break at work.

87. Plaintiffs did not have meal breaks at work even when working longer than 8 hour shifts.

88. Defendants acted knowingly, recklessly and intentionally in denying Plaintiffs their wages and earnings.

## FLSA COLLECTIVE ALLEGATIONS

89. Plaintiffs bring Counts 1, as collective actions pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons employed by Defendants at as Server, Waiter, Bartender, Barback, Backwaiter, Busser, and Runners on or after the date that is three years and 8 months before the filing of this Complaint in this case as defined herein. ("FLSA Collective Plaintiffs").

90. At all relevant times, Plaintiffs, and the members of the FLSA Collective, are and have been similarly situated, have had substantially similar job requirements, and pay provisions, and are and have been subject to Defendants' decision, plan and common policies, programs, practices, procedures, protocols, routines, and rules, including willfully failing and refusing to pay them minimum wage when Defendants operated an illegal tip pool because the polisher participated in the tip pool. The Servers, Waiters, Runners, Bartenders, Barbacks, Backwaiter and Bussers all participated in the mandatory tip pool.

91. The claims of Plaintiffs, stated herein, are essentially the same as those of the other FLSA Collective Plaintiffs.

92. All of the potential class members were affected equally by the Defendants' policy of not paying minimum wage for all hours worked and not paying the correct wage for overtime work because of the inclusion of the polisher in the tip pool.

93. Counts 1 is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and

addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

94. All employees suffered under the same common policy of Defendants of running an illegal tip pool and refusing to pay the correct minimum wage and overtime wage.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

95. Plaintiffs bring the state law Claims for Relief (Counts 2, 3, 4, 5, 6, and 7) under the New York Labor Law ("NYLL") pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by Defendants, employed as Servers, Waiters, Bussers, Bartenders, Barback, Backwaiters and Runners on or after the date that is six years and eight months before the filing of this Complaint in this case as defined herein (the "Class Period").

96. All said persons, including Plaintiffs, is referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

97. Defendants had a common practice of including the polisher, a non-service employee, in the tip pool which is illegal and rendered the tip pool invalid and created an illegal tip pool.

98. Defendants had a common practice of paying the front of the house staff the tip credit wage and not the minimum wage.

99. The proposed Class is so numerous that joinder of all members is impractical, and the disposition of their claims as a class will benefit the parties and the Court. The identities of the proposed Class members are ascertainable through Defendants' payroll records. Although the

precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, there are more than 40 potential Class members.

100.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which could be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, correct overtime wage, illegal retention of tips, violation of the 80/20 rule, incorrect wage notices, and defective wage statements.  Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

101.    Plaintiffs can fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

102.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants.  Class action treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are

small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecutor of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

103.    Upon information and belief, Defendants violated the New York Labor Law. Current employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

104.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including but not limited to:

Whether Defendants employed Plaintiffs and the Class members within the meaning of the NYLL.

Whether Defendants properly compensated Plaintiffs and Class members.

Whether Defendants' tip pool improperly included the polisher and Defendants illegally retained portions of Plaintiffs' and Class members' tips.

Whether Defendants unlawfully utilized the "tip credit" when paying Class members.

Whether the Defendants should have paid the plaintiff the minimum wage and time and half of minimum wage for all overtime hours.

Whether Defendants provided Plaintiffs and Class members with the proper notice and recordkeeping requirements.

Whether Plaintiffs and the members of the Class are entitled to damages, liquidated damages, and if so, the method by which such damages should be calculated.

Whether Defendants are liable for the attorneys' fees and costs of the members of the Class.

## CAUSES OF ACTION

105.     Defendants committed the foregoing acts against Plaintiffs, the FLSA Collective Plaintiffs, and the Class Members.

### COUNT 1
**(FLSA Minimum Wage Violations, 29 U.S.C. §§ 201, *et seq.*)**
**(Brought by Plaintiffs and the FLSA**
**Collective Plaintiffs Against Defendants)**

106.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

107.     Throughout the statute of limitations period covered by these claims, Defendants knowingly failed to pay Plaintiffs, and the members of the FLSA Collective, the full federal minimum wage for each hour worked.

108.     Throughout the statute of limitations period covered by these claims, Defendants

knowingly failed to pay Plaintiffs, and members of the FLSA Collective, the full overtime wage based on the minimum wage for each hour worked.

109.     At all relevant times, Defendants refused to pay Plaintiff, FLSA collective members and class members, the full minimum wage for each hour worked and instead paid them the tip credit wage.

110.     Defendants operated an illegal tip pool because the polisher participated in the tip pool.  29 U.S.C. §203(m).

111.     In order to be a tipped employee, the employee must himself customarily and regularly receive more than $30 a month in tips in order to qualify as a tipped employee.

112.     The polisher is not a tipped employee because he was not on the floor of the restaurant and did not receive $30 in tips directly from the clients.  29 CFR §531.56.

113.     Defendants illegally retained tips and illegally distributed tips to the polisher.

114.     The polisher worked in the back of the restaurants, did not collect tips, customers did not see him and he did not have direct customer interaction.

115.     Defendants' unlawful conduct was willful and intentional within the meaning of the FLSA, 29 U.S.C. § 255(a), therefore a three-year statute of limitations applies.

116.     Plaintiffs, on behalf of themselves and the members of the FLSA Collective, seek damages in the amount of their respective unpaid minimum wage or overtime wage compensation, the difference between the tip credit wage and the minimum wage or overtime wage, liquidated (double) damages, attorneys' fees and costs, prejudgment interest and postjudgment interest and such other legal and equitable relief as this Court deems just and proper.

**COUNT 2**
**(New York Minimum Wage Violations, NYLL §§ 652 _et seq._)**
**(Brought by Plaintiffs and the Class Against Defendants)**

14

117.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

118.    At all relevant times, Defendants utilized the "tip credit" when paying Servers, Bussers, and Runners.

119.    Defendants' violations of NYLL § 196-d, renders them ineligible to utilize the "tip credit." Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 290-91 (S.D.N.Y. 2011); Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007).

120.    Because Defendants was not entitled to utilize the tip credit wages, Defendants was responsible to pay the Plaintiffs and class members the full minimum wage.

121.    Defendants violated the tip credit law by including in the common tip pool the polisher, who did not provide direct customer service and worked in the kitchen.

122.    Each shift one of the bussers would act as the polisher for the entire shift sitting in the back polishing glasses and silverware.

123.    Because Defendants are not entitled to utilize the "tip credit," it was required to pay Plaintiffs, and the Class, the full minimum wage.

124.    As a result of Defendants's unlawful conduct, Plaintiffs, and the Class, were paid wages less than minimum wage in violation of § 652 of the NYLL.

125.    Defendants willfully and intentionally violated § 652 of the NYLL, and accordingly, a six-year statute of limitations is applicable.

126.    As a result of Defendants' willful and intentional unlawful conduct, Plaintiffs, and the Class members, are entitled to damages in an amount to be determined at trial, the difference between the tip credit wage and the minimum wages and overtime wage, disgorgement of the tip credit, liquidated (double) damages, attorneys' fees, costs, pre-judgment interest, post-judgment

interest, all other damages available under New York law, and such other legal and equitable relief as this Court deems just and proper.

## COUNT 3
### (Illegal Deduction from Gratuities, NYLL §§ 193, 196-d and 198-b)
### (Brought by Plaintiffs and the Class Against Defendants)

127.    Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

128.    Pursuant to NYLL § 196-d, "[n]o employer or his agent or an officer or agent of any corporation, or any other person. . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

129.    Defendants willfully retained and continue to retain portions of Plaintiffs' and Class members' tips through Management's practice of including the polisher in the tip pool in violation of NYLL § 196-d.

130.    As a result of Defendants' unlawful conduct, Plaintiffs and Class members were denied tips to which they were otherwise entitled.

131.    Defendants willfully and intentionally violated § 196-d of the NYLL.

132.    As a result of Defendants' willful and intentional unlawful conduct, Plaintiffs and the proposed members of the Class are entitled to damages in an amount to be determined at trial, liquidated damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, all other damages available under New York law, and such other legal and equitable relief as this Court deems just and proper.

## COUNT 4
### (Violation of the 80/20 Rule:  N.Y. Comp. Codes R. & R. tit. 12 §146-2.9
### On behalf of Plaintiffs and class members against Defendants)

133.   Plaintiff and class members realleges and incorporate by reference all preceding paragraphs as if they were set forth again herein.

134.N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9 provides that employer shall not require an employee to work longer than 2 hours or 20% of the day doing non-tipped work.

135. Plaintiffs' non-tipped side work exceeded 2 hours a day or 20% of his shift.

136. Sometimes plaintiff did an hour of side work upon arrival and then did an additional hour or more of sidework at the end of the night.

137. Plaintiffs were required to do approximately 2 hours of closing side work before they were allowed to leave at the end of the shift.

138. On any day that Plaintiff or class members worked at a non-tipped occupation (a) for two hours or more; or (b) for more than twenty percent (20%) of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9.

139. Opening work, side work and closing work ("side work") included folding 100 to 200 napkins, preparing "roll ups," folding triangles, stocking glasses in the station, getting glasses from the kitchen, polishing them, getting various items needed from storage, brewing coffee, setting up the coffee station, stock the teas, setup the milk, restocking the coffee cups, sugar, cleaning the sugars, straightening the tables, filling ice buckets, cleaning, detailing the station, filling water pitchers, stocking stations, lining up and detailing tables, moving tables, placing chairs on tables, breaking down outside tables, chairs and planters, emptying ice buckets, resetting station, cleaning windows, cleaning the tables, managing cash drawer, dividing and recording the cash tips, doing the tip out at the end of the shift, taking out the garbage, recycling garbage and cleaning the bathroom every 30 minutes.

140. Plaintiff Rendon worked closing on Friday, Saturday and Sunday. He would spend over two hours doing closing work.

141. Rendon would start doing his closing side work around 12 midnight and finish his side work around 2 am.

142. Plaintiff Rosas would also work the closing shift and would spend 2 to 3 hours doing closing work.

143. Sidework was broken up into opening side work, side work during the shift and then closing side work.

144. Defendants had a detailed list of side work and the side work was monitored by management.

145. As a result of Defendants' willful and intentional unlawful conduct, Defendants are liable to Plaintiffs for the tip credit wage for each day that Plaintiff worked longer than 2 hours or 20% of their day doing side work, lost wages, liquidated damages and other damages along with costs and attorneys' fees, pre-judgment interest, post-judgment interest, all other damages available under Federal law, and such other legal relief as the Court deems just and proper.

### COUNT 6
**(New York Notice and Recordkeeping Violations, NYLL §§ 195, 198)**
**(Brought by Plaintiffs on Behalf of themselves and the Class Against All Defendants)**

146. Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

147. Defendants failed to provide Plaintiffs with accurate wage statements as required by NYLL § 195(3).

148. Defendants issued wage statements containing numerous inaccuracies including tip credit wage when it should have included the minimum wage, wrong overtime hourly wage, contrary to the requirements of NYLL § 195(3).

149. Defendants' violations were willful and intentional.

150. As a result of Defendants' unlawful conduct, Defendants are liable to each Plaintiffs and Class member in the amount of $5,000, pursuant to NYLL § 198 (1-d), along with costs and attorneys' fees.

**COUNT 7**
**(New York Notice and Recordkeeping Violations, NYLL §§ 195, 198)**
**(Brought by Plaintiffs on Behalf of themselves and the Class Against All Defendants)**

151. Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

152. Defendants failed to give Plaintiffs, and members of the Class, a wage notice when they started and when their wages changed pursuant to NYLL § 195(1).

152. Plaintiffs and members of the Class were damaged by the failure of the Defendants to provide them with the correct hourly wage and overtime wage on the wage notices.

153. Defendants' failure to provide the wage notice was willful and intentional.

154. As a result of Defendants' unlawful conduct, Defendants are liable to Plaintiffs as well as other Class members, for damages of $5,000 pursuant to NYLL § 198(1-b) or for damages in an amount to be determined at trial.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs and members of the Class, pray for relief as follows:

A.   Designation of this action as a collective action on behalf of the members of the FLSA Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.   Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

C.   Designation of this action as a class action pursuant to F.R.C.P. 23;

D.   Designation of Plaintiffs as Representative of the Class.

E.   An award of damages, lost wages, regular pay, minimum wage, overtime, back pay, and recovery of tips, according to proof, including liquidated damages, to be paid by Defendants.

F.   Penalties available under applicable laws.

G.   A civil penalty under § 198(1-b) of $5,000 or in an amount to be determined at trial;

H.   A civil penalty under § 198(1-d) of $5,000 or in an amount to be determined at trial.

I.   Pre-judgment and post-judgment interest.

J.   Attorneys' fees and costs, including fees pursuant to 29 U.S.C. § 216, NYLL § 663, and other applicable laws; and

K.   Such other further legal and equitable relief as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

A jury trial is requested on all claims alleged herein.


Dated: New York, NY
        February 8, 2022

                                         /s/ Jeffrey E. Goldman

By:_____
Jeffrey E. Goldman, Esq.
THE LAW OFFICES OF JEFFREY E. GOLDMAN
260 Madison Ave., 15th Floor
New York, NY  10016
T: 212-983-8999
F: 646-693-2289

*Attorney for Plaintiffs, proposed FLSA Collective
Members, and proposed Class*